
O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGIA MILLER, individually DENISE BAILEY as Guardian Ad Litem for PHILIP ARTHUR MILLER, JR., a minor, and as his authorized representative as the successor in interest for PHILIP ARTHUR MILLER, deceased,<br><br>        Plaintiff,<br><br>  v.<br><br>CITY OF LOS ANGELES, LOS ANGELES POLICE DEPARTMENT, CHIEF OF POLICE WILLIAM BRATTON, SGT. CESAR MATA, and DOES 1-10,<br><br>        Defendants. | Case No. EDCV 07-806-VAP (JCRx)<br><br>**[Motion filed on March 2, 2009]**<br><br>**AMENDED** ORDER GRANTING MOTION FOR SANCTIONS AGAINST DEFENSE COUNSEL LOS ANGELES CITY ATTORNEY'S OFFICE |

    Plaintiffs' Motion for Sanctions came before the Court for hearing on March 23, 2009.  After reviewing and considering all papers filed in support of, and in opposition to, the Motion, the Court GRANTS the Motion.

**I. BACKGROUND**

1    On January 10, 2007, at approximately 12:30 a.m.,
2 decedent Philip Arthur Miller was shot and killed by
3 Sergeant Cesar Mata, Jr. as Mr. Miller left a Masonic
4 Lodge, located at 9714 South Avalon Boulevard in the City
5 of Los Angeles, California. (Joint Pretrial Conference
6 Order ("JPTO") at ¶ 5(a)-(c).) The police were called to
7 the Lodge because a fight had broken out among those
8 present there at a private party; after the officers
9 arrived, shots were fired inside, injuring a man named
10 Levon Bean. On July 6, 2007, the decedent's mother,
11 Georgia Miller, and his son, Philip Arthur Miller, Jr.,
12 represented by his guardian ad litem Denise Bailey, filed
13 a lawsuit against the City of Los Angeles, the Los
14 Angeles Police Department, its Chief, William Bratton,
15 and the officer who shot Mr. Miller, Cesar Mata. (See
16 Compl.) Plaintiffs claimed violations of their Fourth
17 and Fourteenth Amendment rights. (Id.)

19    Before the trial began, the Court issued rulings on
20 Plaintiff's Motions in Limine.[1] The Court, inter alia,
21 granted Plaintiff's Motion in Limine No. 1, barring
22 evidence, testimony, or any argument that the decedent
23 possessed a weapon at the time he was killed.

---

[1] Plaintiffs filed three Motions in Limine; Defendants filed none and failed to file Opposition to any of Plaintiff's Motions.

The jury trial lasted four days, from January 13, 2009 through January 16, 2009. The jury deliberated from January 20, 2009 through January 22, 2009 and was unable to reach a unanimous verdict. The Court declared a mistrial on January 23, 2009.

On March 2, 2009, Plaintiffs filed a "Motion for Sanctions Against Counsel for Defendants" based on statements made by defense counsel during his closing argument. Defendants filed Opposition on March 9, 2009. Plaintiffs filed a Reply on March 16, 2009.

## II. LEGAL STANDARD

The District Court may enter sanctions against a party for wilfully violating its orders or unreasonably multiplying the proceedings under either its inherent power or under 28 U.S.C. § 1927 ("Section 1927").[2] See, e.g., Chambers v. Nasco, Inc., 501 U.S. 32, 43-44 (1991) (discussing inherent power to sanction); Roadway Express, Inc. v. Piper, 447 U.S. 752, 759-63 (1980) (discussing sanction power under Section 1927); Fink v. Gomez, 239 F.3d 989, 991 (9th Cir. 2001) (discussing both inherent power to sanction and power under Section 1927). A Court may enter sanctions under its inherent power for an attorney's bad faith, or willful disobedience of a Court

---

[2] The Court may also sanction under Rule 11 of the Federal Rules of Civil Procedure, but this basis for sanctions does not apply here.

3

1 order; under Section 1927, a Court may sanction an
2 attorney for unreasonably multiplying proceedings with
3 bad faith, improper motive, or reckless disregard for her
4 duty to the Court. <u>Chambers</u>, 501 U.S. at 67-69; <u>B.K.B.</u>
5 <u>v. Maui Police Dept.</u>, 276 F.3d 1091, 1107-08 (2002).  If
6 the Court enters sanctions under its inherent power, it
7 may sanction for any amount necessary to vindicate the
8 authority of the Court and to deter misconduct, including
9 awarding attorneys' fees and costs.  <u>B.K.B.</u>, 276 F.3d at
10 1108-09; <u>Fink</u>, 239 F.3d at 991.  If the Court enters
11 sanctions under Section 1927, it may award sanctions for
12 fees, costs, and expenses for unjustified claims, but may
13 not order reimbursement for the ordinary costs of trial.
14 <u>See</u> 28 U.S.C. § 1927.

### III. DISCUSSION

Plaintiff seeks an award of monetary sanctions against defense counsel, Richard Arias **of the Los Angeles City Attorney's Office**, for the following remarks made during his closing argument:

> "MR. ARIAS: Okay.  He [the decedent] stops.  He comes up.  I think he saw Sergeant Silva there.  But there's no testimony... It's just his nonverbal what he does.  And then there's that moment where he makes a decision.  And he turns to the left and he faces Sergeant Mata.  Now here's where the toxicologist does come in.  We know that he was drunk.  He had .12 or 14 – yeah .12, 14 alcohol we know he had marijuana in his system.
> Maybe that clouded his mind.  I don't know. Maybe he was [in] some rage because he had just fought with this kid and you know the blood was pumping.  I don't know but whatever happened he's got a police officer in front of him when he saw Sergeant

4

```
         Silva oh, I'm trapped I can't go anywhere my God man
         get down on the ground.  End it right there.
              He can't.  Because he shot Bean inside.
         MR. BURTON: Objection, your Honor.  Move of to
         strike, I mean.
         THE COURT: The objection is sustained.  And that
         statement is ordered stricken.
         MR. BURTON: Can the jury be admonished Your Honor.
         THE COURT: Yes.  Ladies and gentlemen, remember that
         argument is not evidence in the case.  There's no
         evidence to support that last statement.
         MR. ARIAS: I stand corrected.  There is absolutely no
         evidence that he had a gun in his hand.  Sergeant
         Mata even admits that.  And I think that that goes to
         his credit too.  If he wanted to lie [all] he [needed
         to say] is say yeah I saw a gun not only that when he
         went down I saw people take the gun and runaway with
         it.  He didn't say that he said I never - you never
         saw a gun in his hand.  As a matter of fact, I only
         use his raising his arm and saw his elbow go up.  To
         his credit, he said only what he saw all right and
         you have to decide one is that reasonable what he
         did. ..."
```

Plaintiffs argue Mr. Arias's statement that the decedent shot Mr. Bean directly violated the Court's ruling granting Plaintiff's Motion in Limine No. 1, to exclude any argument that the decedent had a weapon at the time he was killed.  (See Mot. at 1.)  Plaintiffs argue this statement, as well as Mr. Arias' subsequent statement "There is absolutely no evidence that he had a gun in his hand," misled the jury into thinking there was, in fact, evidence the decedent had a weapon, but that the jury was not allowed to hear it.  (Id.)

Defendants oppose the Motion on the following grounds: (1) Mr. Arias' error was unplanned and not deliberate; (2) the Court can relieve Defendants from their counsel's mistake under "Federal Rule of Evidence

5

60;" (3) the Court instructed the jury that statements made by the attorneys are not evidence; and (4) Plaintiffs presented no evidence of the jury's reliance on the defense counsel's objectionable statements. (<u>See</u> Opp'n at 3-5.)

**A.  Alleged Lack of Willfulness**

Defense counsel attempts to avoid sanctions by arguing his error was not deliberate or willful, but rather uttered while "he was in the rhythm of closing arguments, totally focused on the jury, extemporaneously addressing them and the unplanned statement just came out."  (Opp'n at 3.)

Despite these representations in the Opposition, the Court finds defense counsel's violation of the Court's Order granting Plaintiff's Motion in Limine No. 1 to have been deliberate and willful.  In <u>Fink v. Gomez</u>, 239 F.3d 989, 993-94 (9th Cir. 2001), the Ninth Circuit stated "mere recklessness, without more, does not justify sanctions under a court's inherent power.  But ... sanctions are available if the court specifically finds bad faith or conduct tantamount to bad faith."

Here, Mr. Arias' statement represents "conduct tantamount to bad faith."  He specifically stated the decedent shot Mr. Bean, in direct violation of the

Court's Order granting Plaintiff's Motion in Limine No. 1, and perhaps more importantly, without a shred of evidence in the record to support it. In fact, as Plaintiffs pointed out in their Motion in Limine No. 1, the tests conducted on the decedent revealed only a minimal trace amount of gunshot residue, consistent with presence in a location where shots were fired.

The day before his closing argument, Mr. Arias requested a sidebar conference for the Court to "clarify" its Motion in Limine No. 1 ruling and specify what testimony he could elicit without violating the ruling.[3]

---

[3] Before the lunch recess on January 15, 2009, while Mr. Arias was conducting direct examination of Sergeant Mata, Mr. Arias requested a sidebar conference. During the sidebar, Mr. Arias asked if he could question Sergeant Mata about whether he saw a weapon on the decedent. Mr. Arias wanted to elicit Sergeant Mata's belief whether, despite no gun having been found on the decedent's body, the decedent could have had a gun, but someone else could have picked it up or he could have dropped it. The Court clarified that such a line of questioning would violate the Court's ruling on Plaintiff's Motion in Limine No. 1. Mr. Arias asked to be relieved from the ruling and the Court denied the request.

Later that same day, still on direct examination of Sergeant Mata, Mr. Arias asked the witness whether he believed the decedent had a weapon and whether the witness had confronted other people with weapons in the past. Plaintiffs objected, based on Rule 403 of the Federal Rules of Evidence, and based on the Court's ruling on the Motion in Limine No. 1. The Court sustained the objection. Mr. Arias re-worded the question and asked about the past experience of the witness with persons armed with weapons; the Court instructed the jury that there was no evidence of the decedent having a weapon in this case, but that this evidence was being admitted for the limited purpose of
(continued...)

7

Then, again, during his closing argument, Mr. Arias not only violated the Court's previous ruling, but went beyond that by stating as a fact the decedent not only had a gun, he had used it to shoot Mr. Bean inside the Masonic Lodge.  Both statements were unsupported by the evidence and both were inflammatory.  It defies logic that these statements were not made deliberately and willfully.  Counsel made them (1) one day after seeking "clarification" of the Court's Order on the subject and, after being reminded of the ruling, seeking belatedly to have it reconsidered; (2) in the absence of any supporting evidence; (3) in the face of evidence that the decedent neither had a gun nor shot Mr. Bean; and (4) knowing that one or more members of the jury had submitted questions during the trial asking, for example, if anyone had been prosecuted for the shooting of Mr. Bean.[4]

---

[3] (...continued)
showing Sergeant Mata's state of mind at the time he shot the decedent.

[4] The first note the Court received from the jury during the trial read as follows:
"1) Were any suspects from the <u>lodge</u> shooting apprehended?
2) How many weapons, if any, were found/confiscated?
3) How many people were injured from shots <u>besides</u> Mr. Bean and Mr. Miller?"

8

**B.  Relief Under Rule 60**

Defendants argue they should be relieved from their counsel's negligence under Rule 60.  As Plaintiffs point out in their Reply, although Defendants cite to "Rule 60 of the Federal Rules of Evidence," it appears they intended to cite to Rule 60 of the Federal Rules of Civil Procedure.  In any event, Federal Rule of Civil Procedure 60 has no conceivable application to this issue, and the Court considers this argument no further.

**C.  Jury Admonition**

Mr. Arias argues the Court's admonition to the jury that "statements made by counsel are not evidence" cured his error,[5] and his statements were but "one sentence during one hour of closing argument following approximate [sic] one week of trial...." (Opp'n at 5.)  Were the Court to accept these contentions, it would be issuing an invitation to counsel to insert into closing argument a statement that has no support in the record - indeed, is belied by the evidence in the case -, is inflammatory, and seemingly is designed to appeal to the speculations of the jury.  The Court declines to invite such misconduct.

---

[5] In fact, the Court's admonition to the jury was much stronger, reflecting the seriousness of defense counsel's misconduct.  It instructed the jury that Mr. Arias's statement was ordered stricken and told them "There is no evidence to support that ... statement."

**D.   Absence of Declarations from Jurors**

Finally, Defendants fault Plaintiffs for failing to include declarations from jurors to show the impact of defense counsel's objectionable statement.  This argument lacks merit and is foreclosed by the Federal Rules of Evidence.  Specifically, Federal Rule of Evidence 606(b) clearly bars such evidence: "A juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith.... A juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be precluded from testifying."  See Fed. R. Evid. 606(b).  There is no basis to deny the Motion because Plaintiffs failed to attach declarations that the Court would have been compelled to disregard.

## IV. CONCLUSION

Under its inherent authority, the Court now sanctions **the Los Angeles City Attorney's Office for Deputy City Attorney Richard Arias'** objectionable and prejudicial statements during his closing argument.  See Chambers v. Nasco, Inc., 501 U.S. 32, 43-44 (1991).  The Court awards

to Plaintiffs their reasonable attorneys' fees and costs incurred for the conduct of the trial.

The Court directs Plaintiffs to file a Declaration with detailed billing records as an exhibit to the Declaration no later than April 6, 2009.  If Defendants object to any of the time expended or fees sought, the objections must be made in the matrix form shown in Exhibit A to this Order and filed no later than April 17, 2009.  If Plaintiffs respond to such objections, the responses must be in the matrix form as shown in Exhibit B and filed no later than April 24, 2009.

Dated: May 28, 2009

VIRGINIA A. PHILLIPS
United States District Judge

**Exhibit A**

| ATTORNEY | DATE | DESCRIPTION | TIME CHALLENGED | REDUCE BY | OBJECTION | REASON FOR OBJECTION |
|---|---|---|---|---|---|---|
| J. DOE | 1/2/08 | T/C W/ Consultant | 3.0 | 3.0 | Vague | Fails to articulate who the consultant was & what the conversation concerned |
| S. ROE | 2/1/08 | Research Notice of Related Cases | 2.5 | 2.3 | Excessive | "Notice of Related Cases" is a form document. Attorney shouldn't charge for basic research. |
| J. DOE | 2/20/08 | Calendared dates | 1.3 | 1.3 | Clerical work | Atty cannot charge for clerical work |

**Exhibit B**

| ATTORNEY | DATE | DESCRIPTION | TIME CHALLENGED | REDUCE BY | OBJECTION | RESPONSE TO OBJECTION |
|---|---|---|---|---|---|---|
| J. DOE | 1/2/08 | T/C W/ Consultant | 3.0 | 3.0 | Vague | Meeting w/A. Smith re coroner report & crime scene video |
| S. ROE | 2/1/08 | Research Notice of Related Cases | 2.5 | 2.3 | Excessive | No Response |
| J. DOE | 2/20/08 | Calendared dates | 1.3 | 1.3 | Clerical work | No Response |

13